UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMMAD MAHASHIN, | CASE NO. 2:26-cv-01804-JHC |
| Petitioner, | ORDER |
| v. | |
| JULIO HERNANDEZ, et. al, | |
| Respondents. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Mohammad Mahashin's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has considered the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the Petition.  Dkt. # 1.

**II**

**BACKGROUND**

Petitioner is a non-U.S. citizen who is a native and citizen of Bangladesh.  Dkt. # 12 at 1; *see also Mahashin v. Warden Nw. Det. Ctr.*, No. 2:26-CV-00579-JHC, 2026 WL 686140, at *1

ORDER - 1

(W.D. Wash. Mar. 11, 2026).[1]  He is also a citizen of St. Lucia.  Dkt. # 12 at 1; *see also Mahashin*, 2026 WL 686140, at *1.  Petitioner entered the U.S. on October 26, 2024, was immediately taken into custody, and has been detained since.  Dkt. # 12 at 2, 4.

Petitioner has a removal order to Bangladesh and St. Lucia but has been granted withholding of removal as to Bangladesh.  Dkt. # 12 at 2.  This removal order has been stayed pending a Ninth Circuit appeal filed on February 6, 2026.  Dkt. # 12 at 3.

On March 11, 2026, this Court granted Petitioner habeas relief on grounds of prolonged detention.  *See Mahashin*, 2026 WL 686140.  The Court ordered the Government to provide Petitioner a bond hearing that "compl[ies] with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community" or in the alternative release Petitioner.  *Mahashin*, 2026 WL 686140, at *5.

On March 20, 2026, an Immigration Judge (IJ) held a bond hearing pursuant to this Court's order and found the Government "has met its burden to show that [Petitioner] is a flight risk by clear and convincing evidence" and denied bond.[2]  Dkt. # 11-3 at 2; *see also* Dkt. # 11-4 at 2, 16.  Petitioner is currently detained at the Northwest ICE Processing Center.  Dkt. # 2.

---

[1] Both parties incorporate by reference the facts of *Mahashin*, 2026 WL 686140, and the Court does the same.  *See* Dkt. # 1 at 3 n.1; Dkt. # 10 at 2.

[2] Respondents misstate that the bond hearing occurred on March 30, 2026.  Dkt. # 10 at 2.  The rest of the record contradicts this, and thus the Court assumes this to be an error and finds the hearing occurred on March 20, 2026.  Dkt. # 12 at 3; *see generally* Dkt. # 1.  Regardless, if the hearing did occur on March 30, 2026, then the bond hearing was not in compliance with the Court's order in *Mahashin*, 2026 WL 686140, at *5, and Petitioner must be immediately released.

ORDER - 2

## III

### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241 (a), (c).  "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

A.    Prudential Exhaustion

Respondents request that the Court deny the Petition because Petitioner did not appeal the denial of his bond to the BIA and thus, he has not exhausted his administrative remedies.  Dkt. # 10 at 3-7.  Regarding habeas petitions, the exhaustion requirement is prudential rather than jurisdictional.  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir.2003)).  But even when all three *Puga* factors exits, the Court may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void*." Hernandez*, 872 F.3d at 988 (quoting *Laing* v. *Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Respondents say all three *Puga* factors favor enforcing the exhaustion requirement, and further that none of the *Laing* factors apply.  Dkt. # 10 at 4-5.  Petitioner does not meaningfully

ORDER - 3

engage with the *Puga* factors in his initial briefing but says that, under *Laing*, the Court should exercise its discretion to waive exhaustion because the additional detention that would be required to pursue an appeal to the BIA would cause irreparable injury, and the appeal would likely be futile.[3]  Dkt. # 10 at 13-14.

Petitioner has been detained since October 24, 2024, now nearly 20 months.  Dkt. # 9 at 1.  In that time, he has been unable to provide for his two minor children and wife; he describes concerning behavior by guards preventing sleep and taking food; he experiences symptoms of stress, anxiety, and depression; and he has been physically harmed, including through an assault by another detainee and respiratory problems making it "very difficult" to breathe.  Dkt. # 9 at 1-2.  Petitioner says that "[s]ometimes [he] is starving because there is not enough good food."  Dkt. # 9 at 2.  He describes being served completely frozen meals, raw chicken, rotten food, and he mentions one incident just a few days before submitting his declaration in which he was served an orange covered in mold.  *Id.*  He says that at times he was vomiting two to three times a week, and he has described losing weight and feeling weak.  *Id.*

Respondents do not dispute this treatment.  *See generally* Dkt. # 10.  Instead, they say that the question is not whether irreparable harm occurs but only whether the irreparable harm is individualized.  And they say that "Petitioner has not presented evidence of any unique harm other than what most, if not all, detainees face."  Dkt. # 10 at 6.  This argument holds no water and is a distressing position for the Government to take given the conditions of detention Petitioner has described.

---

[3] On Reply, Petitioner does meaningfully engage with the *Puga* factors.  *See* Dkt. # 14 at 4-7.  But because the Court finds waiving exhaustion appropriate under the *Laing* factors, it need not consider the *Puga* analysis.

ORDER - 4

At the outset, given Petitioner's 600 days of detention, any continued possibility of unlawful detention on its face is sufficient to show irreparable harm.  *See e.g.*, *Perez v. Wolf*, 445 F. Supp. 3d 275, 285-86 (N.D. Cal. 2020) (waiving exhaustion where "[i]f Petitioner is correct on the merits of this habeas petition, i.e., if he is correct that his second bond hearing again violated due process, then he has been unlawfully deprived of a bond hearing for over two years" and even assuming a BIA appeal takes only two months given the prolonged detention the conditions "still present irreparable harm as it is possible Petitioner is being held unlawfully"); *W.T.M. v. Bondi*, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (finding irreparable injury where BIA review exceeded 200 days and "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals.").  And even if it were not, Petitioner's uncontradicted showing of mental and physical harm, including through being starved and repeatedly fed inedible food demonstrates irreparable harm under *Laing*.  *See, e.g.*, *Loya Medina v. Hernandez*, 2026 WL 1260848, at *6 (W.D. Wash. May 7, 2026) (waiving exhaustion where "Petitioner's uncontested factual submissions are sufficient to show irreparable harm").  The Court thus finds waiving prudential exhaustion appropriate here.

B.    Bond hearing

The IJ found that the Government "has met its burden to show that [Petitioner] is a flight risk by clear and convincing evidence."  Dkt. # 11-3 at 2; *see also* Dkt. # 11-4 at 16.  The parties agree that this Court has jurisdiction to review bond determinations for constitutional claims and clear legal error.  Dkt. # 10 at 8; Dkt. # 1 at 15; *see Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024); *see also Soriano v. Hernandez*, __F. Supp. __, 2026 WL 969764, *2-3 (W.D. Wash. Apr. 10, 2026).

ORDER - 5

"The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano*, 2026 WL 969764, at *4 (citing *Martinez*, 124 F.4th at 784-85 & *Anyanwu v. Bondi*, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025)). "Under an abuse of discretion standard, '[a district court] cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Martinez*, 124 F.4th at 785 (considering "dangerousness") (citation modified); *see id.* at 783 ("Even though what constitutes 'dangerousness' is malleable and involves agency discretion, . . . this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts."); *see also Lopez Reyes v. Bonnar*, No. 18-CV-07429-SK, 2018 WL 7474861, at *8 (N.D. Cal. Dec. 24, 2018) ("where the IJ misinterpreted or failed to consider probative evidence, the Court may review such errors under its habeas review.").

In determining whether a Petitioner is a flight risk, the IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). Under the prior habeas order, the burden was on the Government to show by clear and convincing evidence that Petitioner was a flight risk or danger to the community. *Mahashin*, 2026 WL 686140, at *5.

ORDER - 6

At the bond hearing, the Government misstated Petitioner's removal order, said the IJ had previously "note[d] credibility concerns," and said that Petitioner has "very limited avenues for relief remining in immigration court" and "[v]ery little incentive to appear for future hearings." Dkt. # 11-4 at 7-10; *see also* Dkt. # 3-1 at 6.  The IJ sua sponte corrected the record, noting that Petitioner was granted withholding of removal to Bangladesh and that the IJ had made a negative credibility finding in the previous merits hearing.[4]  *Id.*  The IJ then asked questions regarding Petitioner's length of time in the United States and manner of entry.  *Id.*

In response, Petitioner expressed a desire to remain in the United States and to continue pursuing his appeal before the Ninth Circuit.[5]  Dkt. # 11-4 at 11.  Petitioner also showed he had a close family friend whom he has known for many years who was willing to sponsor him.  Dkt. # 11-4 at 13-14; *see* Dkt. # 3-1 at 42.  Petitioner's counsel indicated that the friend's home would be Petitioner's place to stay and the address was provided to the IJ.  *Id.*; *see* Dkt. # 3-1 at 47. Petitioner also submitted the affidavits and identification for this family friend along with another and Petitioner's counsel said there would be others willing to sponsor him.  Dkt. # 11-4 at 13-14; *see* Dkt. # 3-1 at 42.  Petitioner's counsel also discussed conditions of release, such as an ankle monitor, which could guarantee Petitioner's appearance.  Dkt. # 11-4 at 13-14.

Finally, when discussing Petitioner's interest in pursuing his claim, including his successful withholding as to Bangladesh and potential conditions of release, the IJ interrupted Petitioner's counsel to say, "that's not the issue . . . [h]e doesn't want to go to Saint Lucia.

---

[4] In the merits hearing, the IJ found Petitioner to be credible as to his testimony related to Bangladesh, and the negative credibility determination was only related to Petitioner's fear of return to St. Lucia.  *See* Dkt. # 3-1 at 24-25; *see also* Dkt. # 3-1 at 17.  This distinction was not discussed at the bond hearing.  *See* Dkt. # 11-4.

[5] Much of Petitioner's showing was not properly recorded in the transcript.  *See* Dkt. # 11-4 at 11-14; *see also* Dkt. # 3.

ORDER - 7

That's what this is all about. . .the question is, he doesn't want to go to Saint Lucia, and that's where the issues are." Dkt. # 11-4 at 14.

Although both the Government and the IJ stated the standard correctly, the Court's analysis turns on the application of the standard not a recitation of it. *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."). The Government made no showing as to why they believe Petitioner would fail to appear, and speculation alone is not enough to satisfy the clear and convincing standard. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 (W.D. Wash. 2019) ("The clear and convincing evidence standard is a high burden and must be demonstrated in fact."). Nor did the Government respond to Petitioner's suggestion that less restrictive options were available, such as an ankle monitor. *See e.g.*, *Jimenez v. Wolf*, 2020 WL 1082648, at *4 (N.D. Cal. Mar. 6, 2020) (finding the legal error where the IJ denied bond exclusively because the non-citizen was likely to be removed and the Government failed to show that alternatives to detention would be inadequate).

But even if the Government's showing did satisfy the clear and convincing standard, the IJ's statements in the hearing indicate that they did not apply the correct legal standard. Almost the entire hearing involved discussing Petitioner's asylum application. *See* Dkt. # 11-4. When Petitioner's counsel made a showing as to the *Guerra* factors, the IJ interrupted and reframed the issue as Petitioner's unwillingness to be removed to St. Lucia. *See* Dkt. # 11-4. It is unclear what could satisfy this question short of Petitioner withdrawing his appeal and self-deporting. That is not the legal standard, and because the IJ did not apply the correct standard, the IJ abused their discretion and habeas relief must be granted. *See Perez Velasquez v. Bondi*, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) ("The IJ's failure to consider or apply any of the

ORDER - 8

*Guerra* factors and decision to instead rely on three pieces of evidence that 'bear little if any relevance' to Petitioner's risk of flight . . . while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts").

C.      Remedy

Petitioner requests immediate release.  Dkt. # 1 at 15-16.  Respondents are silent on the appropriate remedy.  *See generally* Dkt. # 10.  Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief.  *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005).  Under similar facts, even absent the conditions of confinement alleged by Petitioner, this jurisdiction has found no basis for similarly situated petitioners to continue to be detained.  *See Soriano*, 2026 WL 969764, at *6 (ordering immediate release); *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (same); *W.T.M.*, 2026 WL 262583, at *5 (same); *see also Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]"); *Miri v. Bondi*, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing).  The Court finds the same here, and thus the appropriate remedy is for Petitioner to be immediate released with reasonable conditions of supervision.

## IV

### CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order.  Upon release, Petitioner shall be subject to reasonable conditions of supervision.

ORDER - 9

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) Petitioner requested attorney fees and costs under the Equal Access to Justice Act. See 28 U.S.C. § 2412(d)(l)(A).  To be eligible for fees under the EAJA, a petitioner must submit an application within 30 days of final judgment.  *See id.* § (d)(l )(B).  Accordingly, Petitioner may file a motion with such request no later than July 16, 2026.

(4) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 16th day of June, 2026.

John H. Chun
United States District Judge

ORDER - 10